# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**VCS, LLC**                                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 21-92**

**MT. HAWLEY INSURANCE**                                        **SECTION: "G"**
**COMPANY, ET AL.**

## ORDER AND REASONS

In this litigation, Plaintiff VCS, LLC ("Plaintiff"), the owner of the Wingate by Wyndham Hotel ("Wingate") in Slidell, Louisiana, brings suit against Defendants Mt. Hawley Insurance Company ("Mt. Hawley"), Marsh & McLennan Agency LLC ("Marsh"), and ARI Underwriters, Inc. ("ARI") (collectively, "Defendants").[1] Plaintiff contends that Marsh and ARI acted as Plaintiff's insurance agent in "advis[ing] and recommend[ing] insurance coverage" for the Wingate, including the policy Plaintiff ultimately entered into with Mt. Hawley.[2] Plaintiff now alleges that it was not paid under the terms of the policy for (i) losses sustained due to the COVID-19 pandemic and (ii) unrelated water damage after a guest set off the sprinkler system.[3] Before the Court is Plaintiff's "Motion to Remand."[4] Defendants oppose the motion to remand.[5] Considering the motion, the memoranda in support and in opposition, the arguments made during oral argument, the record, and the applicable law, the Court grants the motion and remands this matter

---

[1] Rec. Doc. 1-2 at 1–2.

[2] *Id.* at 2.

[3] *Id.* at 4, 10.

[4] Rec. Doc. 10.

[5] Rec. Doc. 20 (ARI's opposition brief); Rec. Doc. 21 (Mt. Hawley's opposition brief); Rec. Doc. 22 (Marsh's opposition brief).

to the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

## I. Background

On November 23, 2020, Plaintiff filed a petition against Defendants in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[6] In the Petition, Plaintiff alleges that it owns the Wingate Hotel in Slidell, Louisiana.[7] Plaintiff claims that Marsh and ARI assisted Plaintiff in selecting an insurance policy for the Wingate.[8] Plaintiff asserts that it ultimately entered into an insurance policy for the hotel with Mt. Hawley.[9]

Plaintiff alleges that it has suffered losses under the terms of the policy due to two distinct events.[10] First, Plaintiff alleges that it suffered losses due to the COVID-19 pandemic.[11] Plaintiff claims that both the State of Louisiana's stay-at-home orders and the presence of coronavirus in the hotel itself "create[d] a dangerous property condition and prevent[ed] the use of the property."[12] Plaintiff contends that it sought reimbursement for the COVID-19 losses under its policy but Mt. Hawley denied Plaintiff's claim.[13] Plaintiff therefore brings suit against Mt. Hawley for breach of contract.[14]

In the event that Plaintiff's damages related to COVID-19 exceed the value of Mt. Hawley's policy, Plaintiff brings negligence and breach of contract claims against Marsh and

---

[6] Rec. Doc. 1-2.

[7] *Id.* at 1.

[8] *Id.* at 2.

[9] *Id.* at 1.

[10] *Id.* at 4.

[11] *Id.*

[12] *Id.* at 6.

[13] *Id.*

[14] *Id.*

ARI.[15] Plaintiff alleges that Marsh and ARI acted as Plaintiff's agent in procuring the policy with Mt. Hawley and therefore owed Plaintiff a duty to ensure that Plaintiff had the proper coverage.[16] Moreover, Plaintiff asserts that this duty was heightened because Plaintiff relied on representations made by Marsh and ARI on their websites in selecting the policy in question.[17] Plaintiff claims that Marsh and ARI breached their duties by failing to recommend virus-related coverage to Plaintiff.[18]

Second, Plaintiff alleges that Mt. Hawley failed to reimburse Plaintiff under the terms of the policy for water damage caused by a guest setting off the sprinkler system at the Wingate.[19] Plaintiff alleges that thereafter, despite Plaintiff providing satisfactory proof of loss, Mt. Hawley did not reimburse Plaintiff for over 60 days.[20] Plaintiff further claims that Mt. Hawley's eventual payment for the water damage was $7,164.04 less than Plaintiff was owed, and alleges that Mt. Hawley has failed to pay Plaintiff anything with respect to the business income losses it incurred.[21]

On January 15, 2021, Mt. Hawley removed the case to this Court, asserting federal jurisdiction pursuant to 28 U.S.C. § 1332.[22] Although conceding that Plaintiff and ARI are both citizens of Louisiana and therefore not diverse, Mt. Hawley alleges that Plaintiff improperly joined ARI and, accordingly, ARI's citizenship should be disregarded.[23] On January 28, 2021, Plaintiff

---

[15] *Id.* at 7.

[16] *Id.* at 8.

[17] *Id.* at 9.

[18] *Id.*

[19] *Id.* at 10.

[20] *Id.* at 11.

[21] *Id.*

[22] Rec. Doc. 1.

[23] *Id.* at 3–4.

filed the instant motion to remand.[24] On February 15, 2021, ARI filed an opposition to the motion to remand.[25] Also on February 15, 2021, Mt. Hawley filed an opposition to the motion to remand.[26] On February 16, 2021, Marsh filed an opposition to the motion to remand.[27] On March 9, 2021, with leave of Court, Plaintiff filed a reply in further support of the motion to remand.[28] On March 10, 2021, the Court held oral argument on the motion to remand.[29] On March 12, 2021, with leave of Court, Mt. Hawley and ARI filed a supplemental brief in opposition to the motion to remand.[30] Likewise on March 12, 2021, with leave of Court, Plaintiff filed a supplemental brief in support of the motion to remand.[31]

## II. Parties' Arguments

### A.   *Plaintiff's Arguments in Support of the Motion to Remand*

Plaintiff first argues that remand is appropriate because Mt. Hawley failed to comply with the procedural requirements for removal set out in 28 U.S.C. § 1446(b).[32] Specifically, Plaintiff alleges that Mt. Hawley did not obtain written consent for removal from ARI.[33]

Next, Plaintiff argues that remand is appropriate because Plaintiff and ARI are both citizens of Louisiana and Mt. Hawley has not met its burden of showing that ARI is improperly joined.[34] Plaintiff contends that Mt. Hawley has put forward two arguments in the Notice of Removal in

---

[24] Rec. Doc. 10.

[25] Rec. Doc. 20.

[26] Rec. Doc. 21.

[27] Rec. Doc. 22.

[28] Rec. Doc. 37.

[29] Rec. Doc. 25; Rec. Doc 29.

[30] Rec. Doc. 39.

[31] Rec. Doc. 40.

[32] Rec. Doc. 10-1 at 5.

[33] *Id.* at 5–6.

[34] *Id.* at 1, 4.

favor of improper joinder: (i) Plaintiff's claims against ARI are time-barred under Louisiana Revised Statute § 9:5606, and (ii) Plaintiff has no claim against ARI because ARI owed Plaintiff no duty in relation to Plaintiff's insurance policy with Mt. Hawley.[35] Plaintiff argues that Mt. Hawley cannot prove either and therefore, has failed to show that ARI was improperly joined.[36]

As to Mt. Hawley's first argument, Plaintiff asserts that its claims against ARI are not perempted.[37] Plaintiff claims that "peremptive statutes must be strictly construed against peremption" and here, peremption is "not evident on the face of [Plaintiff]'s Petition."[38] Plaintiff argues that Louisiana Revised Statute § 9:5606 provides a one-year period for a party to bring a claim against an insurance agent.[39] Plaintiff alleges that its claims against ARI relate to Plaintiff's insurance policy for the 2019–2020 year and therefore, fall within the permissible, one-year time period.[40]

As to the second claim, Plaintiff argues that it has adequately stated a claim against ARI.[41] Plaintiff alleges that ARI acted as an insurance agent and "held itself out to [Plaintiff] as advisors of hotel business income insurance."[42] Plaintiff claims that as an agent, ARI owed Plaintiff a duty "to advise [Plaintiff] about the need for broader virus-related coverage" for the Wingate.[43] Moreover, Plaintiff asserts that this duty was heightened in the instant case because ARI held itself out on its website as being "uniquely positioned to assist in providing proper coverages in the

---

[35] *Id.* at 5, 7.

[36] *Id.* at 5.

[37] *Id.* at 7.

[38] *Id.* at 8.

[39] *Id.*

[40] *Id.* at 9.

[41] *Id.*

[42] *Id.* at 10.

[43] *Id.*

Hotel industry."[44] Plaintiff claims that ARI breached this duty when it failed to suggest virus-related coverage to Plaintiff.[45]

**B.    *ARI's Arguments in Opposition to the Motion to Remand***

ARI argues that the Notice of Removal was properly filed despite Mt. Hawley proceeding without the written consent of ARI because written consent of improperly joined defendants is unnecessary.[46]

ARI claims that it was improperly joined as a defendant in the instant action.[47] ARI contends that Plaintiff fails to state an "actionable claim" against ARI because ARI is a wholesale broker, not an insurance agent.[48] As a broker, ARI alleges that it owes Plaintiff no fiduciary duties under Louisiana law and cannot be held liable for any of Plaintiff's alleged damages.[49] Thus, ARI asserts Plaintiff improperly joined ARI.[50]

Even assuming that it is deemed to be an insurance agent, ARI argues that Plaintiff cannot state a claim against ARI because Plaintiff never requested virus-related coverage when selecting an insurance policy.[51] ARI contends that "it is well established under Louisiana law" that insurance agents do not have an affirmative duty to "identify a client's needs, advise a client as to whether they are underinsured or carry the right type of coverage, or recommend additional coverage."[52] Instead, ARI claims insurance agents are required only to use reasonable diligence in procuring

---

[44] *Id.* at 11.

[45] *Id.*

[46] Rec. Doc. 20 at 6.

[47] *Id.* at 2.

[48] *Id.* at 7–9.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 9–11.

[52] *Id.* at 9.

insurance requested by the policy applicant.[53]

While ARI concedes that there are instances in which courts have held that insurance agents have a heightened duty to a policyholder, ARI argues that there was no heightened duty in this case.[54] ARI argues that Plaintiff has not shown the existence of such a duty here because Plaintiff has not "pointed to a relationship between [Plaintiff] and ARI with extended contact and of an extended duration . . ., any meetings between [Plaintiff] and ARI representatives, any instances where ARI directly held itself out as an advisor to [Plaintiff], any instances where [Plaintiff] sought advice or guidance directly from ARI, or any other events which would have lulled [Plaintiff] into a sense of complacency by ARI's representations."[55] ARI contends that any statements made by ARI on its website are insufficient to create a heightened duty.[56]

Alternatively, ARI asserts any claims Plaintiff may have against ARI are perempted under Louisiana Revised Statute § 9:5606.[57] ARI contends that under the statute, a party bringing suit against an insurance agent is required to do so within one year of the party's "knowledge or constructive knowledge" of the underlying act and no later than three years after the underlying act occurred.[58] ARI alleges that Mt. Hawley issued the instant policy to Plaintiff in November 2014.[59] ARI contends that while the policy has since been renewed by Plaintiff each year, "it is well settled that subsequent renewals of insurance policies do not reset the beginning of the peremption period except under very limited circumstances," namely, when "separate and distinct

---

[53] *Id.* at 9–10.

[54] *Id.* at 10–11.

[55] *Id.* (internal quotation marks omitted).

[56] *Id.* at 12.

[57] *Id.*

[58] *Id.* at 13.

[59] *Id.*

acts" occur that affect the policy.[60] Because there have been no distinct acts in this case that would

have restarted the peremption period, ARI argues that Plaintiff's current claim is perempted.[61]

**C.    *Mt. Hawley's Arguments in Opposition to the Motion to Remand***

In its opposition brief, Mt. Hawley makes many of the same arguments ARI put forth in its

opposition. Mt. Hawley alleges that Plaintiff cannot state a claim against ARI because ARI is a

wholesale broker.[62] Mt. Hawley asserts that, as a broker, ARI never communicated with Plaintiff

regarding: (i) the insurance policy in question, (ii) "any negotiations that occurred with respect to

any proposed terms or coverages to be included in the Mt. Hawley Policy," (iii) "any terms,

conditions or endorsements that were actually included in the Mt. Hawley Policy," and (iv) "the

delivery of the Mt. Hawley Policy to Plaintiff."[63] Mt. Hawley contends that therefore, as a broker,

"ARI cannot and does not owe any duty to advise Plaintiff, perform due diligence regarding

Plaintiff's business, or recommend appropriate insurance coverage to Plaintiff."[64]

Mt. Hawley further argues that even if ARI is considered to be an insurance agent, Plaintiff

has failed to show that ARI owed Plaintiff a heightened duty to recommend virus-related

coverage.[65] Mt. Hawley contends that a heightened duty is applicable only in "exceptional

circumstances clearly not present in this case."[66] Outside of these limited instances, Mt. Hawley

argues that an agent owes an applicant only a duty of "reasonable diligence," a duty that is

"fulfilled when the agent procures the insurance requested by the insured."[67] Given that Plaintiff

---

[60] *Id.* at 13–14.

[61] *Id.* at 14.

[62] Rec. Doc. 21 at 4–6.

[63] *Id.* at 5–6.

[64] *Id.* at 6.

[65] *Id.* at 8.

[66] *Id.*

[67] *Id.*

"does not allege or contend that ARI failed to procure the insurance that Plaintiff requested," and given that "Plaintiff does not (and cannot) allege that . . . ARI [] had any specific knowledge of Plaintiff's 'individual situation' that would somehow give rise to any duty to affirmatively advise Plaintiff regarding the availability of virus/pandemic coverage," Mt. Hawley argues that Plaintiff has failed to state a claim against ARI.[68]

Finally, Mt. Hawley contends that ARI is improperly joined in this case because Plaintiff's claims against ARI are perempted under Louisiana Revised Statute § 9:5606.[69] Mt. Hawley argues that Plaintiff's policy was first issued in 2014, thereby placing Plaintiff's current claims outside the one-year and three-year periods for bringing a claim under Louisiana Revised Statute § 9:5606.[70] Mt. Hawley claims that subsequent renewals of the policy did not restart the peremption period because Plaintiff makes "no allegations of a 'separate, distinct act.'"[71]

**D.      Marsh's Arguments in Opposition to the Motion to Remand**

Marsh "adopts and incorporates herein the arguments and authorities set forth by ARI and Mt. Hawley" in their respective opposition briefs as to why ARI was improperly joined.[72] Marsh adds no further arguments in opposition to remand.

**E.      Plaintiff's Reply in Further Support of the Motion to Remand**

In reply, Plaintiff first argues that "[w]hether ARI, as a wholesale broker, owed a duty to [Plaintiff] is a question of fact to be determined at trial."[73] Plaintiff contends that whether ARI

---

[68] *Id.* at 8–13.

[69] *Id.* at 13.

[70] *Id.* at 14.

[71] *Id.* at 14–15.

[72] Rec. Doc. 22 at 1.

[73] Rec. Doc. 37 at 4.

acted as an agent to Plaintiff is a question of fact and best suited to the jury.[74] Plaintiff claims that it has "adequately pleaded facts" to state a claim against ARI as its agent.[75]

Plaintiff alleges that ARI owed Plaintiff a duty because ARI "held itself out to the world on its website . . . as an advisor of hotel business income insurance" and Plaintiff "reasonably relied on ARI as a consultative broker who would recommend appropriate coverages each year."[76] Moreover, Plaintiff argues that ARI owed Plaintiff a heightened duty because ARI held itself out as "uniquely positioned" to assist with hotel insurance.[77]

Finally, Plaintiff contends that its claims against ARI are not perempted under Louisiana Revised Statute § 9:5606.[78] Plaintiff alleges that its claims against ARI relate to "acts, omissions or occurrences made in [] connection with" the 2019–2020 policy and therefore, Plaintiff's claims fall within the one-year and three-year peremptive periods under Louisiana Revised Statute § 9:5606.[79]

**F.     *Mt. Hawley and ARI's Supplemental Brief in Opposition to the Motion to Remand***

Mt. Hawley and ARI argue that under Louisiana law, wholesale brokers "with no direct contact or communication to the insured owe no duty to the insured."[80] Mt. Hawley and ARI allege that ARI had no direct contact with Plaintiff and therefore, ARI owed Plaintiff no duty.[81]

Mt. Hawley and ARI further contend that Plaintiff's claims that it relied on ARI's website in selecting its insurance policy "fail as a matter of law" because "by Plaintiff's own admission,

---

[74] *Id.* at 4–5.

[75] *Id.* at 6.

[76] *Id.* at 6–7.

[77] *Id.* at 7.

[78] *Id.* at 9.

[79] *Id.* at 10–11.

[80] Rec. Doc. 39.

[81] *Id.* at 2.

the insurance loss at issue in this case had already occurred long before Plaintiff even saw the ARI website."[82] Therefore, Mt. Hawley and ARI claim that any statements made on ARI's website "could not have caused Plaintiff's alleged losses" and ARI cannot be liable for negligence.[83]

Moreover, Mt. Hawley and ARI argue that any statements included on ARI's website do not create a duty to Plaintiff.[84] Mt. Hawley and ARI contend that other courts have held that "standard advertising language used on many insurance agency websites" does not create a duty to an insured party.[85]

### G.   *Plaintiff's Supplemental Brief in Support of the Motion to Remand*

Plaintiff contends that whether ARI acted as an agent toward Plaintiff is a question of fact to be determined by the jury.[86] Plaintiff argues that "[r]esolving all doubts in favor of remand as this Court must do due to federalism concerns," Plaintiff has sufficiently alleged that ARI owed Plaintiff a duty and therefore, ARI was not improperly joined.[87]

Further, Plaintiff alleges that "[t]he policies procured by ARI for [Plaintiff] since 2014 have changed over time."[88] Plaintiff contends that the "terms, conditions and coverages" in Plaintiff's policies beginning in 2014 up to the 2019–2020 policy have "changed over time."[89] Therefore, Plaintiff argues that its claims against ARI are not perempted.[90]

---

[82] *Id.*

[83] *Id.*

[84] *Id.* at 3.

[85] *Id.* at 3–5.

[86] Rec. Doc. 40 at 2–3.

[87] *Id.* at 3.

[88] *Id.* at 4.

[89] *Id.*

[90] *Id.*

## III. Legal Standard

### A.    Legal Standard for Removal

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[91] Remand to state court is appropriate if the federal court lacks subject matter jurisdiction.[92] A federal court has subject matter jurisdiction over an action pursuant to 28 U.S.C. § 1332 "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between citizens of different states."[93] Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[94]

### B.    Improper or "Fraudulent" Joinder[95]

In this case, the parties do not dispute that Plaintiff and ARI are both citizens of Louisiana and that ARI's presence in this suit destroys diversity. Despite the presence of a non-diverse defendant in this lawsuit, Defendants argue that removal is proper because Plaintiff has fraudulently joined ARI, the non-diverse defendant, in order to avoid federal jurisdiction over this suit.

"The fraudulent joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity."[96] The party asserting improper joinder "bears a heavy burden of proving that joinder of the in-state party was

---

[91] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

[92] *Acuna v. Brown & Root Inc*., 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp*., 855 F2d 1160, 1164 (5th Cir. 1988)).

[93] 28 U.S.C. § 1332(a)(1).

[94] *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (internal citation omitted).

[95] The Fifth Circuit refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases. *See, e.g., Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006).

[96] *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (internal citations omitted).

improper."[97] The Fifth Circuit has long recognized two methods of improper joinder: (1) actual fraud in the pleading of jurisdictional facts, and (2) the inability of the plaintiffs to plead a cause of action against the non-diverse defendants in state court.[98] In this case, Defendants allege that ARI is improperly joined because Plaintiff cannot plead a cause of action against ARI.

In *Smallwood v. Illinois Central Railroad Co.*, the Fifth Circuit stated that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which, stated differently, means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[99] District courts may assess whether a plaintiff has "a reasonable basis of recovery under state law" in either of two ways.[100] First, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[101] Second, in rare cases, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[102]

If a court decides to "pierce the pleadings" when assessing a claim of improper joinder, it may "consider summary-judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," and resolve "[a]ny contested issues of fact and any ambiguities of state

---

[97] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

[98] *Crockett*, 436 F.3d at 532 (internal citations omitted).

[99] *Smallwood*, 385 F.3d at 573.

[100] *Id.*

[101] *Id.*

[102] *Id.*

law" in the plaintiff's favor.[103] However, a court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[104] In other words, where courts choose to pierce the pleadings, the party asserting fraudulent joinder must provide evidence that "negate[s] the possibility" that the non-diverse party may be held liable.[105]

The Fifth Circuit has stated that district courts should look at summary-judgment-type evidence at this stage of the proceedings only in those cases, "hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder."[106] Even in such cases, the district court's decision to pierce the pleadings and conduct a summary inquiry is within in its discretion.[107]

## IV. Analysis

In the instant motion to remand, Plaintiff argues that because Plaintiff and ARI are both citizens of Louisiana, there is no complete diversity and this Court lacks federal jurisdiction over this action. Defendants, by contrast, allege that this Court has jurisdiction because ARI was improperly joined. In support of their improper joinder argument, Defendants claim that (i) Plaintiff has failed to state a claim against ARI and (ii) Plaintiff's claims against ARI are perempted under Louisiana Revised Statute § 9:5606. While Plaintiff also alleges that the Notice of Removal was procedurally deficient because Mt. Hawley failed to obtain written consent from ARI, the Fifth Circuit has held that consent for removal is not required from an improperly-joined

---

[103] *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003).

[104] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

[105] *Travis*, 326 F.3d at 650.

[106] *Smallwood*, 385 F.3d at 573.

[107] *Id.*

defendant.[108] Therefore, if the Court finds that ARI was improperly joined, ARI's consent is not needed for removal. Each of Defendants' arguments in favor of improper joinder is addressed in turn.

### A.    Whether Plaintiff Stated a Claim Against ARI

First, although the parties in this case lack complete diversity of citizenship because Plaintiff and ARI are Louisiana citizens, Defendants contend that the Court has diversity jurisdiction over this matter because Plaintiff improperly joined ARI as a defendant.[109]

As discussed above, the Fifth Circuit recognizes an "improper joinder" exception to the complete diversity requirement.[110] Improper joinder entails a plaintiff's inability to plead a cause of action against the non-diverse defendant in state court.[111] The test for improper joinder is "whether the defendant has demonstrated that there is *no possibility* of recovery by the plaintiff against an in-state defendant."[112] Put another way, the district court must not have any reasonable basis to predict that the plaintiff might be able to recover against a non-diverse defendant.[113]

To determine whether a plaintiff has a reasonable basis to recover against a non-diverse defendant, a district court "looks at the allegations contained in the complaint."[114] If a "plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no improper joinder."[115] In the Petition, Plaintiff brings a breach of contract claim against Mt. Hawley, alleging

---

[108] *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

[109] Rec. Doc. 1 at 4.

[110] *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 219 (5th Cir. 2018); *see also Smallwood*, 385 F.3d at 573.

[111] *Cumpian*, 910 F.3d at 219.

[112] *Id.* (quoting *Smallwood*, 385 F.3d at 573) (emphasis added).

[113] *Id.*

[114] *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

[115] *Id.*

that Mt. Hawley refused to reimburse Plaintiff under the terms of Plaintiff's insurance policy for losses sustained as a result of the COVID-19 pandemic.[116] However, in the event Plaintiff's damages exceed the amount of coverage provided in the policy, Plaintiff also brings claims against Marsh and ARI for "negligence and/or breach of contract" in relation to Plaintiff's COVID-related losses.[117]

As to Plaintiff's negligence claim, Louisiana courts conduct a "duty-risk analysis" to determine whether a defendant is liable for negligence.[118] To prevail on a negligence claim, a plaintiff must prove five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the defendant's conduct caused actual damages.[119]

Under the first prong, Plaintiff has stated facts sufficient to support a finding that ARI acted as Plaintiff's agent and therefore owed Plaintiff a duty. Under Louisiana law, "[a]n insurance agent who undertakes to procure insurance for another owes an obligation to his client."[120] Defendants claim that ARI is a wholesale broker and not an insurance agent, and therefore owed no duty to Plaintiff.[121] However, while it is true that wholesale brokers who have no communication with an insurance customer owe the customer no duty,[122] as another judge in the Eastern District of

---

[116] Rec. Doc. 1-2 at 4.

[117] Id. at 5–7.

[118] La. Civ. Code art. 2315; *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So. 2d 627, 632–33 (citing *Mathieu v. Imperial Toy Corporation*, 94-0952 (La. 11/30/94), 646 So. 2d 318, 321); *see also Nagle v. Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014) (Vance, J.).

[119] *Lemann*, 923 So. 2d at 633.

[120] *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So. 2d 728, 730 (La. 1973).

[121] *See, e.g.*, Rec. Doc. 20 at 7.

[122] *See, e.g.*, *Plata v. Triton Diving Servs. LLC*, No. 14-0131, 2015 WL 5822876, at *1 (E.D. La. Oct. 6,

Louisiana has previously noted, outside of this scenario there is a "possibility of a wholesale broker being held liable as an agent."[123] Here, Plaintiff has adequately alleged that ARI acted as Plaintiff's agent. For example, Plaintiff claims that it "reasonably relied on Marsh/Eustis and ARI's representations of their unique expertise in insurance coverage selection and policy recommendations for its industry following their reviews and analysis of [Plaintiff]'s insurance and business."[124] Further, Plaintiff alleges that ARI was labeled on the insurance policy in question as an "Agent/Broker."[125] Plaintiff alleges that ARI's website provides information on "business insurance selection and analysis services."[126] While ARI's status as an agent or a wholesale broker is ultimately a question of fact,[127] Plaintiff has alleged sufficient facts to support a finding that ARI acted as an agent and therefore, owed Plaintiff a duty.

In determining whether insurance agents have breached this duty, Louisiana courts have held that an insurance agent "owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance."[128] In order to recover for a loss arising out of the failure of an insurance agent to obtain insurance coverage, a plaintiff must prove:

> (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was

---

2015) (Berrigan, J.).

[123] *Id.*

[124] Rec. Doc. 1-2 at 9.

[125] *Id.* at 2.

[126] *Id.* at 8.

[127] *See Colvon v. Novastar Mortg., Inc.*, No. 06-10535, 2007 WL 2874784, at *2 (E.D. La. Sept. 26, 2007) (Livaudais, J.) ("Whether an insurance broker in any particular transaction acts as agent of the insured or the insurer is a question of fact, dependant on the particular circumstances of the case.").

[128] *Karam*, 281 So. 2d at 730.

properly insured.[129]

Louisiana law does not recognize a duty owed by an insurance agent to spontaneously advise or procure any specific type or amount of insurance coverage for a client.[130] Here, Plaintiff has not alleged that Plaintiff requested virus-related coverage or that ARI ignored any request for such coverage. Accordingly, Plaintiff has failed to show that ARI breached its general duty to Plaintiff as an agent.

However, Plaintiff has alleged that ARI owed Plaintiff a heightened duty and breached such duty. While it is true that Louisiana law does not recognize a duty owed by an insurance agent to spontaneously advise or procure any specific type or amount of insurance coverage for a client,[131] there are some instances where an insurance agent can be held liable for failing to advise the client of recommended coverage.[132]

In *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, the Fifth Circuit held that:

> Under this scenario, an insurance agent is more than a "mere order taker" for the insured. His fiduciary duties include advising the client with regard to recommended coverage, investigating and ascertaining the financial condition of prospective companies, and notifying the insured of policy cancellations or terminations. Where an agent is familiar with the insured's business, has reason to know the risks against which an insured wants protection, and has experience with the types of coverage available in a particular market, we must construe an undertaking to procure insurance as an agreement by the agent to provide coverage for the client's specific concerns.[133]

The Fifth Circuit also stated that "[w]here an insurance broker has experience in a particular field,

[129] *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990) (internal citations omitted).

[130] *Isidore Newman School v. J. Everett Eaves Inc.*, 2009–2161 (La. 7/6/10); 42 So. 3d 352.

[131] *Id.*

[132] *Offshore Prod. Contractors, Inc.*, 910 F.2d at 229–30.

[133] *Id.* at 230 (internal citations omitted).

18

that broker should possess reasonable knowledge of the general types of policies available, understand their different terms, and explore the specific coverage available in the area in which [the client] seeks to be protected.  Proper diligence requires the insurance broker to 'canvass the market' and to be informed about different companies and variations in the available terms.'"[134]

Subsequent to the Fifth Circuit's holding in *Offshore Production*, the Louisiana Supreme Court decided *Isidore Newman Sch. v. J. Everett Eaves, Inc.*[135] In *Isidore Newman*, the plaintiff school sued its insurance agent because its insurance policy did not cover significant tuition losses it had incurred as a result of Hurricane Katrina.[136]  The Louisiana Supreme Court examined a line of state and federal cases in which courts had denied that an insurance agency had a duty to independently assess the needs of the client and advise the client regarding a specific type of coverage.[137] The court ultimately held that the insurance agent at issue had no liability to the school because "it is well settled that the necessary coverages are best determined and calculated by the insured, who is charged with the primary responsibility to read the policy," and there was no evidence to suggest that the agent "had any way of knowing [about] the school's potential loss of business income."[138]

While some courts have questioned whether this holding overrules the Fifth Circuit's ruling in *Offshore Production*, other courts, including this Court, have found that the Louisiana Supreme Court's holding merely limits *Offshore Production* to a specific factual situations.[139] These courts

---

[134] *Id.* at 231.

[135] 42 So. 3d at 352.

[136] *Id.* at 353–56.

[137] *Id.* at 357–58.

[138] *Id.* at 358.

[139] *See Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, No. 12-1026, 2014 WL 12721449, at *1 (E.D. La. 2014) (Brown, J.)*; Hernandez v. State Farm Gen. Ins. Co.*, No. 13-5783, 2014 WL 1457813, at *3 (E.D. La. 2014) (Morgan, J.); *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2010 WL 11545223, at *4 (E.D. La. 2010) (Zainey, J.).

have determined that *Offshore Production* may still apply when an agent has reason to know that the client had a specific risk or requested coverage for specific circumstances.[140] Even the Louisiana Supreme Court in *Isidore Newman* acknowledged that "[t]he courts have noted that 'the advice that an agent had an affirmative duty to give the insured' involved 'aspects of the policies ... that were not within the knowledge generally held by a lay person,' i.e., 'the agent's specific knowledge of the insured's individual situation triggered that duty to disclose.'"[141] The Louisiana Supreme Court then noted that part of its finding that the agent had not failed to exercise diligence was that "[t]he facts alleged do not suggest that [the agent] had any way of knowing the school's potential loss of business income."[142]

Plaintiff points to representations made on ARI's website in alleging that ARI owed Plaintiff a heightened duty. Specifically, Plaintiff highlights statements on ARI's website in which ARI "touts its business insurance selection and analysis services" and claims to be "uniquely positioned" to assist policy applicants, including in the hotel industry.[143] Plaintiff claims that "[s]imply stated, ARI held itself out to [Plaintiff] as advisors of hotel business income insurance" yet failed to advise Plaintiff regarding virus-related coverage.[144] On a motion to remand based on fraudulent joinder, the Court cannot assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[145] Under this standard and construing all "doubts regarding whether

---

[140] *Nola Ventures,* 2014 WL 12721449, at *1; *Hernandez,* 2014 WL 1457813, at *3; *Lightfoot,* 2010 WL 11545223, at *4.

[141] *Isidore Newman School,* 42 So. 3d at 358 (quoting *Parker v. Lexington,* No. 06–4156, 2006 WL 3328041 (E.D. La. 2006) (Zainey, J.)).

[142] *Id.*

[143] Rec. Doc. 10-1 at 9–10.

[144] *Id.* at 10.

[145] *Guillory,* 434 F.3d at 308–09.

20

removal jurisdiction is proper" in favor of remand,[146] Plaintiff has stated a claim that ARI owed Plaintiff a heightened duty and breached such duty by failing to recommend virus-related coverage.

Thus, because Plaintiff has stated a claim that ARI owed Plaintiff a heightened duty and breached this duty, Plaintiff has satisfied the first two requirements for proving negligence.[147] Plaintiff has also satisfied the remaining three requirements, alleging that ARI's conduct (i) was a cause-in-fact of Plaintiff's injuries, (ii) was a legal cause of Plaintiff's injuries, and (iii) caused actual damages,[148] and has therefore stated a negligence claim against ARI.[149] Given that Plaintiff has stated a claim against ARI, remand is appropriate.

**B.    *Whether Plaintiff's Claims Against ARI are Perempted***

Alternatively, Defendants argue that any claims brought by Plaintiff against ARI are perempted under Louisiana Revised Statute § 9:5606. Defendants allege that Plaintiff's claims against ARI relate to the insurance policy between Plaintiff and Mt. Hawley that was first issued in November 2014.[150] Defendants assert that "[w]hile the Mt. Hawley Policy has been renewed by [Plaintiff] every year following its issuance," each renewal did not restart the time limitations set out in Louisiana Revised Statute § 9:5606 because there were "no notable changes" in the policy

---

[146] *Acuna*, 200 F.3d at 339.

[147] To prevail on a negligence claim, a plaintiff must prove five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the defendant's conduct caused actual damages. *Lemann*, 923 So. 2d at 633.

[148] In the Petition, Plaintiff alleges that ARI caused its injuries when claiming that "[t]o the extent [Plaintiff] is found to be uninsured and/or underinsured for its Covid-19-related losses under the Policy, [Plaintiff] submits it was due to the . . . negligence of Marsh/Eustis and ARI." Rec. Doc. 1-2 at 13.

[149] *Lemann*, 923 So. 2d at 633.

[150] *See, e.g.*, Rec. Doc. 20 at 13.

year-to-year.[151] By contrast, Plaintiff argues that there is a presumption against peremption and contends that Plaintiff's policy changed each year, including Plaintiff's 2019–2020, thereby restarting the peremption period under Louisiana Revised Statute § 9:5606.[152]

Under Louisiana law, tort actions against an insurance agent arising from insurance services must be brought within a peremptive period of only one year.[153] In relevant part, Louisiana Revised Statute § 9:5606(A) states:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.

"In general, renewals of insurance policies do not operate to restart peremption."[154] An exception to this rule exists, however, "if the complained of conduct constitutes separate and distinct acts, which give rise to immediately apparent damages."[155] Therefore, when analyzing an insurance policy that has been renewed, "[t]he inquiry is whether the actions of the insurance agents at the time of renewal can be construed to constitute an act separate from the initial policy procurement."[156] If so, the peremptive period restarts.

Here, both parties seemingly agree that Mt. Hawley first issued the insurance policy in question to Plaintiff in 2014, a policy that was thereafter renewed on a yearly basis through 2019–

---

[151] *Id.* at 13–14.

[152] Rec. Doc. 10-1 at 8–9, Rec. Doc. 40 at 4.

[153] *Borden*, 589 F.3d at 171.

[154] *Fid. Homestead Ass'n v. Hanover Ins. Co.*, 458 F. Supp. 2d 276, 280 (E.D. La. 2006) (Berrigan, J.).

[155] *Id.* (citing *Biggers v. Allstate Ins. Co.*, 886 So.2d 1179, 1182 (La. App. 5 Cir. 10/26/04)).

[156] *Id.*

2020.[157] However, Plaintiff alleges that the policy has changed over the years such that the instant action is not perempted.[158] Specifically, Plaintiff alleges that the 2019–2020 policy contained provisions that differed from the 2018–2019 policy, thereby restarting the one-year clock under Louisiana Revised Statute § 9:5606.[159] Moreover, at oral argument, Plaintiff represented that each year at the time of renewal, ARI and Marsh, as agents and brokers for numerous insurers, had an obligation to correspond with Plaintiff regarding Plaintiff's best coverage options for the upcoming year.[160] Considering that any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction,"[161] Plaintiff has alleged facts to suggest that its claims against ARI may not be perempted by Louisiana Revised Statute § 9:5606.[162]

This Court notes that in "rare" cases—where the plaintiff survives a Rule 12(b)(6) analysis but "misstate[s] or omit[s] discrete facts that would determine the propriety of joinder"—a district court "*may*, in its discretion, pierce the pleadings and conduct a summary inquiry."[163] Stated differently, the Court may end the inquiry and remand the case once the Plaintiff survives a Rule

---

[157] Rec. Doc. 10-1 at 8; Rec. Doc. 20 at 14.

[158] Rec. Doc. 40 at 4.

[159] *Id.*

[160] "Both of these, both Marsh, Eustis, formerly known as Eustis, and ARI are brokers. They don't just represent Mt. Hawley. They represent all kinds of insurers. They're independent agents and brokers. So every time you renew, when you deal with them, they're supposed to talk to you about well, you know, why don't you use star surplus this time or Lloyds. Your best premium, your best coverage is not necessarily renewing this policy." Statement of Plaintiff's counsel at oral argument.

[161] *Vantage Drilling*, 741 F.3d at 537.

[162] Plaintiffs also argue that the notice of removal is procedurally deficient because Defendants did not obtain the consent of ARI, the non-diverse defendant, prior to removal as required under 28 U.S.C. § 1446(b). Rec. Doc. 10-1 at 5. The Fifth Circuit has held that consent for removal is not required from an improperly-joined defendant. *Jernigan*, 989 F.2d at 815. Here, however, as discussed above, the Court has found that ARI was properly joined. Therefore, consent from all defendants was required prior to removal. Because Defendants did not obtain consent from ARI, the notice of removal is deficient.

[163] *Vigne v. Cooper Air Freight Servs.*, No. 19-1213, 2019 WL 2710502, at *4 (E.D. La. June 28, 2019) (Brown, J.) (quoting *Smallwood*, 385 F.3d at 573) (emphasis added).

12(b)(6) analysis.[164] Here, Plaintiff survives a Rule 12(b)(6) analysis because the Petition adequately pleads a negligence claim against ARI. Therefore, the Court need not conduct a summary inquiry. Remand is appropriate.

### V. Conclusion

Considering the foregoing,

**IT IS HEREBY ORDERED** that Plaintiff VCS, LLC's ""Motion to Remand"[165] is **GRANTED**.

                                                                                13th
**NEW ORLEANS, LOUISIANA,** this _____ day of April, 2021.


                              _Nannette Jolivette Brown_
                              **NANNETTE JOLIVETTE BROWN**
                              **CHIEF JUDGE**
                              **UNITED STATES DISTRICT COURT**

---

[164] *See Cumpian*, 910 F.3d at 220.

[165] Rec. Doc. 10.